UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Steven Michael Diaz,<br><br>                              Petitioner,<br>v.<br>W.L. Montgomery,<br><br>                             Respondent. | Case No.: 16cv2475 AJB (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. No. 1]** |

Petitioner Steven Michael Diaz, proceeding pro se and in forma pauperis, filed this petition for writ of habeas corpus (Petition) alleging that his right to effective assistance of counsel was violated when (1) appellate counsel failed to brief three issues on appeal regarding the trial court's admission of certain evidence; and (2) trial counsel failed to object to admission of that same evidence. Petition, pp. 6a, 6f.

Respondent filed an answer, arguing that the first claim is unexhausted, and that in any event both claims fail on the merits. Diaz filed a traverse. For the following reasons, the court **RECOMMENDS** that the district judge **DENY** the habeas petition and dismiss it with prejudice.

## I. BACKGROUND[1]

### A. Relevant Facts.

From September 13 to October 7, 2013, there was a series of seven robberies at gas stations throughout San Diego County in which the perpetrator arrived and left the scene in an older model black BMW. He wore a hooded sweater with a bandana over the lower part of his face. On two occasions, he wore a sweatshirt with an emblem on the back. Each time, the perpetrator brandished a gun at the cashier or clerk and demanded all the money from the register. On September 25, the perpetrator was not wearing gloves. A surveillance camera located above the cash register recorded the perpetrator's tattooed hands as he removed the cash.

San Diego Police Department Detective John Smith sent a photo of the perpetrator's tattoos to law enforcement agencies and received Diaz's name from his

---

[1] This court quotes verbatim the factual background from the California Court of Appeal's opinion. Lodgment 8. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a state court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545−47 (1981) (deference is owed to factual findings of state trial and appellate courts); *Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001) (paraphrasing facts from the state court opinion). Petitioner may rebut the presumption of factual correctness only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 545 F.3d 1181, 1183 n.1 (9th Cir. 2008).

parole officer.  Smith obtained a copy of Diaz's tattoos and determined they were identical to the tattoos recorded on September 25.  On October 9, 2013, police officers arrested Diaz outside his mother's home as he was leaving with his girlfriend in her black 2000 BMW 740-IL.  Diaz's girlfriend said she allowed Diaz to use her BMW while she was working.

Officers searched Diaz's mother's home and found several articles of clothing matching the clothing worn by the perpetrator during the robberies.  When detective Smith showed photos of the perpetrator's tattoos to Diaz's mother, Maryanne Bennetch, she sighed and said they looked like Diaz's tattoos.

At a pretrial hearing, defense counsel asked the court to limit the detective's testimony about the parole agent's identification of Diaz.  The prosecutor planned to introduce photos of Diaz's tattooed hands and the perpetrator's tattooed hands in evidence but also wanted the officers to testify about their investigations.  The trial court said that although the investigation was interesting, it was not part of the People's case.  Nevertheless, the court did not want to invite speculation by the jurors if there was a gap in chronology.  The court ruled the detective could not testify that a parole officer identified Diaz.  Instead, the detective could say he circulated a photo of the tattoos and another law enforcement officer informed him that Diaz may have similar tattoos.  The prosecutor and defense counsel agreed to the proposed limitation of the detective's testimony.

At trial, victims and bystanders from each gas station testified.  One witness saw Diaz's face before Diaz pulled a bandana over his mouth and nose, and identified him in court.  Several witnesses noticed the perpetrator's older model black BMW.  One witness identified it as a 740 series BMW.

The prosecution introduced surveillance videos from all but one of the gas station robberies. Deputy Sheriff Nikolas Katrantzis testified he secured the surveillance video at an ARCO gas station in Spring Valley but the video had been lost due to human error. The prosecutor asked Katrantzis, "What did you see in the video?"  Without objection,

3

16cv2475 AJB (NLS)

Katrantzis said the video showed a person exiting a black BMW, entering the store, pointing a gun at the clerk, taking money out of the cash register, and leaving the store.

Detective Smith testified about his investigation into the gas station robberies, his identification and arrest of Diaz, and Bennetch's identification of Diaz's tattoos and clothing. Bennetch denied making those statements to Smith.

Detectives Smith and Stan Schwarz testified it was unusual to have a BMW involved in a robbery. Over objection, Detective Smith said to his knowledge, there had not been any other robberies in San Diego County involving a 7 series BMW in the year following Diaz's arrest.

After the close of evidence, the trial court said several of the officers had testified about robbery patterns and asked whether the defense wanted an expert opinion instruction. Defense counsel said the police did not testify as experts. She did not want too much weight given to their testimony. The trial court said the expert witness instruction was a defense-friendly instruction required by statute to address that issue. (§ 1127, sub. (b).) Counsel withdrew her objection to the instruction.

After the verdict, in a bifurcated proceeding, Diaz admitted he was convicted for robbery in 2008. This count was alleged both as a strike and a prison prior. The information also alleged a second prison prior for aggravated assault with a deadly weapon on an inmate. Diaz was convicted and sentenced to a consecutive second term. Diaz admitted the prison assault.

At sentencing, Diaz filed a motion to dismiss the strike under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530 (*Romero*). The court denied the motion, stating that although the previous robbery was relatively minor, the nature and circumstances of the current offenses were extreme. In addition, Diaz committed the current offenses while he was on parole. The trial court also determined the consecutive sentence for the prison assault was a second prison prior under *People v. Walkkein* (1993) 14 Cal.App.4th 1401, 1409-1411.

///

The trial court sentenced Diaz to 29 years in prison, imposing the upper term of five years on count 1, doubled to 10 years for the prior strike; the midterm of one year on counts 2 through 7, each doubled for the strike, for a total of 12 years; five years on the 2008 robbery; and one year for each prison prior, for a total of two years. The trial court imposed fines, fees and restitution, and credited Diaz with custody credits.

### B. Procedural History.

After the conviction Diaz's appellate counsel found no arguable appellate issues. She filed a *Wende*[2] brief and identified 10 potential issues. Lodgment 5. Diaz then filed a supplemental brief with a claim for ineffective assistance of counsel (IAC) based on counsel's failure to (1) object to "profile evidence" regarding the use of BMWs in robberies; (2) object to testimony about the investigation that led to Diaz being identified as a suspect; and (3) request a limiting instruction about law enforcement's investigatory steps, profile evidence and opinions. Lodgment 7. Diaz also asked that eight of the 10 issues appellate counsel identified receive further briefing or consideration. Lodgment 7, p.26.

The court of appeal found that the eight identified issues and the ineffective assistance of counsel claim all lacked merit. Lodgment 8. Diaz then filed a petition for review with the California Supreme Court that alleged UAC on these bases: (1) appellate counsel was ineffective by failing to brief the trial counsel's deficient performance on the three evidentiary issues Diaz identified in his IAC claim to the appellate court; and (2) trial counsel was ineffective for failing to object to the identified evidence at trial. Lodgment 9, pp.13, 17. The California Supreme Court summarily denied review. Lodgment 10.

Diaz filed this Petition alleging IAC based on the same two claims he raised in the petition for review with the California Supreme Court. Dkt. No. 1.

---

[2] *People v. Wende*, 25 Cal.3d 436, 441-442 (1979).

5

## II. DISCUSSION

### A. Exhaustion of Claim 1.

Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison must first exhaust their state judicial remedies. 28 U.S.C. § 2254(b), (c); *Granberry v. Greer*, 481 U.S. 129, 134 (1987). To exhaust a claim, a petitioner must "fairly present[] his federal claim to the highest state court with jurisdiction to consider it . . . or . . . demonstrate[] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). The petitioner must raise the very same federal claims brought in the federal petition before the state supreme court. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). For example, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* at 366.

Diaz raised both claims alleged in the Petition to the California Supreme Court. But Respondent points out that the first claim for appellate IAC may not be properly exhausted because Diaz did not present the IAC claim regarding appellate counsel to the court of appeal in his supplemental brief filed with that court. *See* Cal. R. Ct. 8.500(c)(1) ("As a policy matter, on petition for review the Supreme Court normally will not consider an issue that the petitioner failed to timely raise in the Court of Appeal."). Further, Respondent argues that California courts encourage prisoners to raise IAC claims on habeas review. Despite this possibility of unexhaustion, Respondent argues that the claim is without merit and should be denied.

If the court assumes for the purpose of this analysis that Claim 1 is unexhausted, the court could review the claim on the merits notwithstanding the failure to exhaust. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Specifically, a "federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a

6

colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-624 (9th Cir. 2005). If the court proceeds with reviewing an unexhausted claim, it must review it de novo. *Bovarie v. Giurbino*, 558 F.Supp.2d 1030, 1037 (C.D. Cal. 2008); *see Lucas v. Davis,* 2017 WL 1807907, at *9 (S.D. Cal. May 5, 2017) (noting "the 'plainly meritless' standard is akin to that of a 'colorable' claim). A claim is "plainly meritless" or "not colorable" if "'it is perfectly clear that the petitioner has no hope of prevailing.'" *Lucas*, 2017 WL 1807907 (citing *Cassett*, 406 F.3d at 624).

But Claim 1 appears to be either actually or technically exhausted. Here, the California Supreme Court denied the petition for review that contained the appellate IAC claim in question. Because this claim was presented to the highest state court, and the language of Rule 8.500(c)(1) leaves room for a possible exception to the rule that requires a claim to first be presented to the court of appeal, the claim may in fact be actually exhausted. *See* Cal. R. Ct. 8.500(c)(1) (stating "the Supreme Court *normally* will not consider an issue…" (emphasis added)). Given that the California Supreme Court ruled on Claim 1 without mention of the impropriety of the claim being before it, it is likely that Claim 1 is actually exhausted.

Alternatively, Claim 1 may be technically exhausted if a return to state court would be futile. If Diaz were to return to state court, he already exhausted his direct appeal, so the only option left for him would be to file a habeas petition. But his time for filing a habeas petition in the California courts expired because he would have had, at most, 60 days to file his habeas petition from the time the California Supreme Court denied his petition for review on November 10, 2015. Thus, Diaz would have had to file a habeas petition no later than early January 2016. *See Evans v. Chavis*, 546 U.S. 189, 199-201 (2006) (holding that federal courts should assume that California courts consider petitions filed after unexplained delays of 30 to 60 days to be untimely); *Walker v. Martin*, 562 U.S. 307, 312 (2011) (holding that California's timeliness requirement providing that a prisoner must seek habeas relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information

7

offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied).

Because Diaz would no longer be able to pursue Claim 1 in state court, the claim is technically exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him"); *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) ("the district court correctly concluded that Phillip's claims were nonetheless exhausted because a return to state court would be futile"). To the extent Claim 1 meets the actual or technical requirements of exhaustion, the court recommends the claim be denied on the merits for the reasons set forth below.

### B. Legal Standard Under AEDPA.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 governs this Petition. *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a federal court will not grant a habeas petition with respect to any claim adjudicated on the merits in state court, unless that adjudication was (1) contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).

To determine whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, this court reviews the last reasoned state court decision on the merits. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). When no state court provides a reasoned decision on the merits, this court must independently review the record. *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2003); *Himes v. Thomspon*, 336 F.3d 848, 853 (9th Cir. 2003) (explaining that an independent review of the record is the only basis to see whether a silent state court decision is objectively reasonable).

///

A summary denial of petitioner's claim is presumed to be a denial on the merits. *See Phelps v. Alameida*, 569 F.3d 1120, 1126 n.8 (9th Cir. 2002) (rejecting a petition for failure to state a prima facie case constitutes a denial on the merits). While conducting an independent review of the record, the federal court cannot analyze just what the state court did when it issued a summary denial; it must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Harrington v. Ritcher*, 562 U.S. 86, 98 (2011).

Here, the California Supreme Court issued a summary denial of both of Diaz's claims, which constitutes a denial on the merits. *See* Lodgment 10. The state court gave a reasoned opinion as to Claim 2. Lodgment 8. And while the IAC issue of appellate counsel was not expressly before it, the appellate court made a finding as to appellate counsel's performance. Lodgment 8, p.9.

### C. Ineffective Assistance of Counsel.

#### 1. Legal Standard.

A defendant is denied his constitutional right to counsel when a defense attorney's performance falls below an objective standard of reasonableness and consequently prejudices the defense. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must be so serious that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369-370 (1993). In assessing counsel's performance, the court employs a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The *Strickland* standard is "clearly established law" for AEDPA purposes. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). Petitioner carries the burden to show the state court applied *Strickland* to the facts here in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). "An unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (quotations omitted). The court's review of counsel's performance is "doubly deferential when it is

conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 6. The "doubly deferential" standard "gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 13 (2013) (citation omitted).

### 2. Claim 1: Ineffective Assistance of Appellate Counsel.

Diaz filed an IAC claim based on appellate counsel's failure to brief an IAC claim based on trial counsel's failure to: (1) object to "profile evidence" regarding the use of BMWs in robberies; (2) object to testimony about the investigation that led to Diaz being identified as a suspect; and (3) request a limiting instruction about law enforcement's investigatory steps, profile evidence and opinions. The court of appeal made an express finding that appellate counsel was competent on Diaz's appeal: "A review of the record pursuant to *Wende* and *Anders*, including the issues suggested by counsel and appellant, has disclosed no reasonably arguable appellate issues. Diaz has been represented by competent counsel on this appeal." Lodgment 8, p.9. Further, the appellate court went through each of the identified types of evidence and jury instruction and determined that trial counsel was not ineffective for failing to object to them, as addressed below.

"The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citation omitted); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992). To establish prejudice in the context of ineffective assistance of appellate counsel, a petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694). As with ineffective assistance of trial counsel claims: "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Id.*, n. 14 (quoting *Strickland*, 466 U.S. at 697).

In its order addressing Petitioner's direct appeal, the court of appeal—after reviewing the record pursuant to *People v. Wende*, 25 Cal.3d 436 (1979) and *Anders v. California*, 386 U.S. 738 (1967)—found no reasonably arguable appellate issues, and that

appellate counsel competently represented Diaz on the appeal. Lodgment 8, p.9. Further, the appellate court gave a reasoned decision as to why Diaz suffered no prejudice from the allowed evidence and jury instruction that he complains appellate counsel failed to brief.

Diaz complains in the traverse that because he raised reasonable arguments in his supplemental brief, he was entitled to counsel that argued those issues on appeal. Traverse, p.19. To be effective under *Strickland*, "counsel need not appeal every possible question of law." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (internal quotation omitted). On direct appeal, the appellate court reviewed the record itself for any appealable issues. It did not find any. Lodgment 8. When Diaz raised in his supplemental brief to the appellate court all the claims he presumably asserts that appellate counsel failed to argue in the direct appeal, the state appellate court denied those claims. Appellate counsel's failure to raise all the claims Diaz wanted raised, along with the state court's findings that those claims had no merit, show that counsel was not ineffective under *Strickland*.

Based on these findings, this court finds that the state court's finding that appellate counsel was competent and that Diaz suffered no prejudice from the permitted evidence and jury instruction was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### 3. Claim 2: Ineffective Assistance of Trial Counsel.

Diaz claims that trial counsel was ineffective because he failed to: (1) object to "profile evidence" regarding the use of BMWs in robberies; (2) object to testimony about the investigation that led to Diaz being identified as a suspect; and (3) request a limiting instruction about law enforcement's investigatory steps, profile evidence and opinions. The appellate court noted that the appellate record "sheds no light on why trial counsel acted or failed to act in the manner alleged." Lodgment 8, p.7. But it found that that counsel's actions did not meet the required showing of prejudice:

11

> Diaz's claims of ineffective assistance of trial counsel centers on counsel's failure to object to what he terms "profile evidence" concerning the use of BMW's in robberies and to testimony about the investigation that led to the identification of Diaz as the suspect. Diaz also contends counsel was ineffective by not requesting a limiting instruction about law enforcement's investigatory steps, profile evidence, and opinions.
>
> \*\*\*
>
> Any claim of ineffective assistance for not objecting to the deputy sheriff's testimony about the contents of the lost surveillance video at the Spring Valley ARCO gas station would not meet the required showing of prejudice. The victim in that robbery identified Diaz at trial as the man who came into the gas station with a gun and demanded money. With respect to any claim for not objecting to an expert witness instruction, the record shows counsel withdrew her objection as a valid trial tactic.
>
> There is no merit to the claim the trial court erred when it allowed the detective to give opinion evidence concerning the perpetrator's identity. The jurors were instructed they were not required to accept the opinion of any witness as true or correct. The jury viewed photos of the perpetrator's hands and Diaz's hands. Presumably, the jurors followed the court's instructions and independently decided whether the information on which the witness relied was true and accurate.

Lodgment 8, pp.7-8. The appellate court found that any testimony about the lost ARCO video, which included a statement about "a person exiting a black BMW," did not prejudice Diaz because the victim of that crime identified Diaz as the perpetrator. Lodgment 8, pp.3, 7. It also found that there was no prejudice regarding the testimony that led to Diaz's identification because the jurors were instructed on the issue, and the court noted that victims and bystanders from each gas station testified as to elements of his identity. Lodgment 8, pp.3, 8. Finally, the appellate court found that the record showed that trial counsel's withdrawal of her objection to the expert witness instruction was a valid trial tactic, as the "trial court said the expert witness instruction was a

defense-friendly instruction required by statute to address that issue." Lodgment 8, pp.4, 8.

In reviewing the appellate court opinion, this court finds that the state court's finding is not an unreasonable application of *Strickland*.

### III. CONCLUSION

The court finds that Diaz fails to state a claim cognizable on federal habeas review, and **RECOMMENDS** that the district judge **DENY** the Petition and dismiss it with prejudice.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). **IT IS ORDERED** that no later than **July 17, 2017**, any party to this action may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed with the court and served on all parties no later than **July 27, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: June 22, 2017

_/s/ Nita L. Stormes_
Hon. Nita L. Stormes
United States Magistrate Judge